UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WITHROW NETWORKS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE, LLC, et al.,<br><br>    Defendants. | Case No. 5:24-cv-03203-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

Plaintiff Withrow Networks, Inc. alleges that defendants Google, LLC and YouTube, LLC infringe its patent, which relates to multimedia streaming. Defendants move to dismiss the complaint, contending that the claims of the asserted patent are not patent eligible under 35 U.S.C. § 101. For the following reasons, the Court denies the motion to dismiss.

## BACKGROUND

Withrow owns U.S. Patent No. 10,771,849 ("the '849 patent"). The underlying patent application was filed in 2005, and the patent, titled "Multimedia System for Mobile Client Platforms, was issued on September 8, 2020. The patent's claims generally relate to the transmission and playback of segmented multimedia on mobile devices over wireless networks.

Claim 1 of the '849 patent recites:

> 1. A method comprising:
>
> receiving audio and video segments encoded in a digital encoding format and with an encoding rate; wherein, said audio and video segments are associated with object parameters and supplied host path identification to form multimedia objects;
>
> requesting by a multimedia player, transmission of said multimedia objects; wherein said multimedia objects are located using http and received by said multimedia player from servers using a wireless connection;

> playing back received multimedia objects by the multimedia player, wherein the multimedia player is configured to play multimedia objects in a sequence such that fluidity, video quality and audio quality are maintained by selecting a plurality of said multimedia objects that reflect available network bandwidth, autonomously adjusting said selection and playback according to the multimedia object parameters and supplied host path identification, and by
>
> utilizing optimized decoding processes to maintain quality playback.

According to Withrow, the problem that the '849 patent sought to solve was the poor, inconsistent quality of mobile streaming caused by varying network conditions, differing hardware capacities, and server-oriented architecture. At the time of the patent's 2005 filing date, there were significant problems with streaming on mobile devices.[1] Users experienced suboptimal video playback, including popping sounds, black screens, and other artifacts that diminished their experience. These problems were the result of several factors. First, mobile internet networks experienced fluctuations in available data capacity and wireless devices could not account for these variations, leading to high latency. The available software at the time did not adapt the size of streamed content based on the specific conditions of the particular player. Second, there were a variety of different mobile devices with different technological needs and capacities. Because the available streaming technology did not adapt to these individual client/player requirements, streaming was forced to target the lowest common denominator, resulting in a single low-quality stream. Third, streaming was centered on a server monitoring and controlling the streaming process. This model, where the server pushed data to the client, required server management of the selected data stream and resulted in a more complex, data intensive, and expensive architecture.

The invention purportedly enables more fluid, high-quality streaming by teaching what is now known as adaptive multi bitrate (ABR) streaming. ABR streaming is a method for delivering video content over the internet that adjusts the quality of the stream based on the viewer's network conditions and device capabilities. It does this by employing file-based protocols that enable the use of client-driven (rather than server-driven) streaming solutions. According to Withrow, the

---

[1] For the purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Withrow's complaint.

1  '849 patent teaches a method whereby: (a) audio and video is received and sliced into segments at
2  a specified data rate, whereby each segment is associated with parameters describing the
3  characteristics and location of the segment with which it is associated, (b) thereby permitting the
4  use of file-based internet protocols, (c) so a client media player can select the most appropriate
5  stream segment, and (d) decode for playback in a manner that minimizes computational overhead.

6  Withrow filed this lawsuit against Google and YouTube in May 2024. Defendants now
7  move to dismiss pursuant to Rule 12(b)(6).

## LEGAL STANDARDS

### I.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint fails to state a claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

3

## II. Patent eligibility under 35 U.S.C. § 101

35 U.S.C. § 101 makes patentable "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." This broad provision has an important exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). A patent is "not rendered ineligible ... simply because it involves an abstract concept." *Id.* at 217. But if a patent does involve an abstract concept, it must apply that concept "to a new and useful end." *Id.*

*Alice* establishes a two-step test for determining patent eligibility under 35 U.S.C. § 101. 573 U.S. at 217. The first step is "determin[ing] whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If they are not, the inquiry ends. But if the patent is directed to an abstract idea or other patent-ineligible concept, the court proceeds to the second step: "determin[ing] whether the additional elements [of the claim] transform [its] nature … into a patent-eligible application." *Id.* (cleaned up). This inquiry involves "a search for an inventive concept ... sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (cleaned up).

Patents are "presumed valid." 35 U.S.C. § 282(a). The "burden of establishing invalidity" is on the party asserting it. *Id.* This requires "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship.*, 564 U.S. 91, 95 (2011). Eligibility "is a question of law" with "underlying questions of fact." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358–59 (Fed. Cir. 2020). Patent eligibility can only be "determined on the pleadings … when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018). "If there are claim construction disputes at the Rule 12(b)(6) stage," the Court "must proceed by adopting the non-moving party's constructions," or the Court "must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (cleaned up).

**ANALYSIS**

For computer-related inventions, the first step of the *Alice* inquiry considers "whether the claims are directed to an improvement to computer functionality." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *see also Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (cleaned up) ("In addressing the first step of the section 101 inquiry, as applied to a computer-implemented invention, it is often helpful to ask whether the claims are directed to an improvement in the functioning of a computer."). Inventions directed to such an improvement are patent eligible under 35 U.S.C. § 101. But an invention is not directed to improving computer functionality if it merely "add[s] conventional computer components to well-known business practices," *Affinity* 838 F.3d at 1270 (cleaned up); recites "generalized steps to be performed on a computer using conventional computer activity," *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (cleaned up); or focuses "on a process that qualifies as an abstract idea for which computers are invoked merely as a tool," *Enfish*, 822 F.3d at 1336. In order to be directed to an improvement in computer functionality, a claim "must go beyond stating a functional result" and "identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020). The claim must "focus on a specific means or method that improves the relevant technology." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

Defendants argue that the representative claim is not directed to improving computer functionality because it merely describes a functional result without disclosing a specific method for achieving that result. According to defendants, the claim is directed to transmitting and playing back multimedia using the conventional process of bit streaming. Defendants characterize the claim as containing only the following four steps: (1) receiving encoded multimedia segments, (2) requesting transmission of multimedia, (3) playing back the received multimedia, and (4) using optimized decoding processes to maintain quality playback. Dkt. No. 35 at 10. According to

defendants, these steps describe the standard process of bit streaming and merely recite "generalized steps to be performed on a computer using conventional computer activity." *Id.*

Defendants are correct that a claim directed merely to transmitting and displaying video is directed to an abstract idea for purposes of the exception to 35 U.S.C. § 101. In *Hawk Technology Systems, LLC v. Castle Retail, LLC*, the Federal Circuit held that a patent that taught "methods for generating, transmitting, receiving, and viewing high-quality video" was directed to the general abstract ideas of "displaying images, converting them into a format, transmitting them, and so on." 60 F.4th 1349, 1354, 1357 (Fed. Cir. 2023). The claim did not disclose a patent-eligible improvement in functionality because it merely recited an action that "has been a part of business practices since video cameras have been available." *Id.* at 1355 (quoting *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 220CV02766JPMTMP, 2021 WL 5832793, at *4 (W.D. Tenn. Sept. 15, 2021)). The patent holder argued that the patent was not directed to an abstract idea because it was directed to "a solution to a technical problem, specifically a multi-format digital video product system capable of maintaining full-bandwidth resolution while providing professional quality editing and manipulation of images." *Hawk*, 60 F.4th at 1357. The court rejected that argument because it determined that the claims did not actually "recite a specific solution to make the alleged improvement." *Id.* at 1358. Instead, the claims were "recited at such a level of result-oriented generality that those claims amount[ ] to a mere implementation of an abstract idea." *Id.* The claims did not disclose a patent-eligible improvement in functionality because they merely recited an action that "has been a part of business practices since video cameras have been available." *Id.*

Here, defendants argue that the representative claim is directed to the same abstract idea at issue in *Hawk*: transmitting and displaying videos. But claim 1 of the '849 patent goes further than that. It discloses a specific method for transmitting video using "[a]udio and video segments [that] are associated with object parameters and supplied host path identification to form multimedia objects." '849 patent, claim 1. It discloses a specific method for displaying video, whereby a multimedia player displays those audio and video segments "in a sequence such that fluidity, video quality and audio quality are maintained by selecting a plurality of said multimedia objects

6

that reflect available network bandwidth, [and] autonomously adjusting said selection and playback according to the multimedia object parameters and supplied host path identification." *Id.* While the claim does identify the improvement in functionality that the invention achieves, it is not recited at the "level of result-oriented generality" that made the patent in *Hawk* directed to an abstract idea. The automatic adjustment of the selection and playback of multimedia objects according to their object parameters and host path identification to accommodate available network bandwidth is a *specific* method of addressing the general problem of poor, inconsistent mobile streaming quality. The claim is thus not only directed to improving the transmission and playback of multimedia on mobile phone devices but also discloses a specific method for doing so that goes beyond conventional practice.

This case is also distinguishable from *Helios Streaming, LLC v. Warner Bros. Discovery, Inc. et al.*, which concerned patents directed to the idea of "leveraging data to improve streaming technology." 713 F. Supp. 3d 806, 815 (C.D. Cal. 2024). Although the patents at issue in *Helios*, like the patent here, were concerned with adaptive streaming, they disclosed only a method for improving the efficiency of an established process of using metadata to request and send media content. As the court explained, "[o]vercoming efficiency concerns, alone, is not a unique technical problem." *Id.* at 816. Here, the method disclosed effects a more profound transformation in the relevant technology, not simply a minor improvement in its efficiency. It does not teach a method for making server-oriented streaming processes—the conventional technology at the time of the invention—more efficient; rather it teaches an alternative, client-centric, adaptive method of streaming to mobile devices. The *Hawk* court held that the patents in that case described their general purpose but did not disclose a sufficiently specific method for achieving it. 713 F. Supp. 3d at 816. Here, the claim not only discloses its general purpose—maintaining the "fluidity, video quality and audio quality" of streaming on mobile devices in the face of variable network bandwidths—but also a method for doing so by "selecting a plurality of … multimedia objects," which are created by associating "[a]udio and video segments … with object parameters and supplied host path identification," and "autonomously adjusting [the] selection and playback [of

7

those multimedia objects] according to the multimedia object parameters and supplied host path identification." '849 patent, claim 1.

In arguing that the representative claim fails *Alice* step one, defendants emphasize the claim's generality. They maintain, for example, that the "claim discloses the purported invention only in functional terms, without any technical details as to how to achieve the intended result." Dkt. No. 35 at 6; *see also id.* at 11 ("The element just claims the functional result of optimized decoding, without any limitation to a particular method of optimization or decoding or explanation of how those functional results are to occur."); *id.* at 13 (quoting *Hawk*, 60 F.4th at 1358) ("Claim 1's elements are 'recited at such a level of result-oriented generality that [the] claims amount to a mere implementation of an abstract idea.'"); *id.* at 14 (cleaned up) ("[C]laim 1 recites use of various 'parameters' but does not explain what the claimed parameters are or how they should be manipulated, nor describe how the alleged goal of conserving bandwidth while preserving data was achieved."). The generalities that defendants identify, however, relate to the meaning of specific terms in the patent, such as "parameters," and the subprocesses by which the claim's overall process of automatically adjusting the sequence for playing back multimedia objects is realized. Whether those terms disclose a specific method for implementing a technical solution to the problem addressed by the patent, rather than simply describing a function achieved through conventional computer methods, presents a claim construction issue.[2] For the purposes of defendants' Rule 12(b)(6) motion, the overall method taught in the patent involves a specific enough improvement in the functionality of multimedia streaming on mobile devices to satisfy the first step of the *Alice* test.

**CONCLUSION**

For the foregoing reasons, the Court denies defendants' motion to dismiss. The denial is without prejudice to any arguments defendants might raise after the patent's claims have been construed.

---

[2] While the generalities that defendants identify may support claims that the patent lacks definiteness, was obvious, or was not novel, defendants did not move to dismiss on any of those grounds.

8

**IT IS SO ORDERED.**

Dated: January 21, 2025

_____
P. Casey Pitts
United States District Judge

9