UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WITHROW NETWORKS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE, LLC, et al.,<br><br>    Defendants. | Case No. 24-cv-03203-PCP (VKD)<br><br>**ORDER RE MARCH 14, 2025 DISCOVERY DISPUTE RE PROPOSED PROTECTIVE ORDER**<br><br>Re: Dkt. No. 56 |

The parties have agreed on most of the terms of a proposed protective order but disagree about the following four provisions: (1) a patent acquisition bar; (2) third-party review of source code notes; (3) potential challenges to requests for printed source code; and (4) restrictions against protected information leaving the United States. Dkt. No. 56. Discovery-related matters have been referred to the undersigned magistrate judge. *See* docket. The Court finds this dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).

In this action, plaintiff Withrow Networks, Inc. ("Withrow") asserts that defendants Google, LLC and YouTube, LLC (collectively, "Defendants") infringe at least claim 1 of U.S. Patent No. 10,771,849 ("the '849 patent"). Dkt. No. 1 ¶¶ 76-77, 80-81. Specifically, Withrow alleges that Defendants' provision of streaming services to mobile devices that use YouTube player applications and web-based applets through implementations utilizing the MPEG-DASH standard and/or the HLS standard infringes the '849 patent. *Id.* ¶¶ 30, 76-77, 80-81; Dkt. No. 48 at 1. Withrow does not allege that it offers any products or services that practice the patented invention or that it otherwise competes with either defendant. *See* Dkt. No. 1 *generally*.

The parties agree that discovery will likely require the exchange of documents and

information that a party considers "highly confidential," including source code. Both parties use the Northern District of California's Model Protective order for cases involving patents ("Model Order")[1] as the starting point for their respective proposed orders. *See* Patent L.R. 2-2. The Court considers each disputed provision.

### 1.     Sec. 8(b): Patent Acquisition Bar

The parties have agreed on a "prosecution bar," which prohibits any individual who receives "highly confidential" material from being "involved in" "the prosecution of patents or patent applications relating to adaptive bitrate streaming or any subject matter described in the 'Field of Invention'" in the '849 patent, including any patents claiming priority to or related to the '849 patent. The "prosecution bar" begins upon an individual's access to the "highly confidential" material and ends two years after termination of the action. This "prosecution bar" provision is an "optional" term in the Model Order.

Defendants propose to also include a "patent acquisition bar," which would prohibit any individual who receives access to "confidential" or "highly confidential" material from being "involved in" "activity related to" "the acquisition of patent or patent applications . . . relating to adaptive bitrate streaming or any subject matter described in the 'Field of Invention'" in the '849 patent or "advising or counseling clients" about such acquisition. Dkt. No. 56 at 3-4, Ex. B. Defendants argue that such a provision is warranted because Withrow's counsel regularly represent patent acquisition firms and non-practicing entities, and they could be in a position to inadvertently misuse Defendants' protected information in advising their clients regarding acquisition of patents for assertion against Defendants. *Id.* at 3-4. Withrow objects that the Model Order does not contemplate a "patent acquisition bar" and that there is no justification for the broad "patent acquisition bar" Defendants propose here. *Id.* at 2.

While a "patent acquisition bar" may be appropriate in some circumstances, the Court agrees with Withrow that Defendants have not shown good cause for a bar that applies upon an individual's access to *any* protected material or that encompasses such a broad scope of

---

[1] https://cand.uscourts.gov/forms/model-protective-orders/

technologies and subject matter. Accordingly, the Court rejects Defendants' proposed section 8(b).

### 2.  Section 9(c): Third-Party Review of Source Code Notes

The parties agree that a Receiving Party reviewing a Producing Party's source code may take notes of the review on a designated notetaking computer, and that such notes may be printed out upon completion of the review. These printed notes must be treated as "highly confidential"[2] source code material and must not be viewed by the Producing Party.

Defendants propose to include the following provisions regarding notes taken by the Receiving Party: "Any notes taken on the laptop will be reviewed by an agreed-upon third party to ensure they do not contain source code. If the notes do not contain source code, they will be printed and provided to the reviewer." *Id.* at 4. They argue that, although the Model Order does not provide for *any* electronic devices to be used during source code review, they acceded to Withrow's request to use a note-talking computer, and in those circumstances, wish to ensure that Withrow is not using that device to copy source code into its reviewer's notes. *Id.* Withrow objects that the proposed third-party review would invade the work product protection that applies to its review notes and that Defendants are already permitted to "visually monitor" Withrow's review. *Id.* at 3.

Defendants are correct that the Model Order does not contemplate use of a computer for purposes of notetaking or for any other purpose besides review of the source code. However, the Model Order also does not prohibit notetaking. Any notetaking by the Receiving Party cannot include copying any portion of source code into the notes, whether those notes are taken by hand or on a designated notetaking computer, and the parties may wish to make this explicit in their proposed order. However, the Court agrees with Withrow that Defendants have not shown good cause to require third-party review as a means of ensuring compliance with this aspect of the protective order, particularly where such review would require a Receiving Party to expose its work product. Accordingly, the Court rejects Defendants' proposed addition to section 9(c).

---

[2] The proposed protective order uses the term "Restricted Confidential – Source Code," but that term is nowhere defined.

3

**3.     Section 9(d): Potential Challenges to Requests for Printed Source Code**

The parties agree that "the Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial." *Id.*, Ex. C. Additionally, such print requests are limited to no more than 25 consecutive pages, or an aggregate total of no more than 750 pages, absent prior written approval by the Producing Party. *Id.*

Defendants propose to include a further qualification regarding printing source code: "Even if within the limits described, the Producing Party may challenge the amount of source code requested in hard copy form or whether the source code requested in hard copy form is reasonably necessary to any case preparation activity" and "[c]ontested printouts do not need to be produced to the Receiving Party until the matter is resolved by the Court." *Id.*, Ex. B. Withrow objects that this provision is unnecessary and invites disputes. *Id.* at 3.

The Court agrees that Defendants' proposed additional language is unnecessary. The agreed numerical limits set a ceiling, not a floor. Any disputes about compliance with the "reasonably necessary" provision of section 9(d) (or any other provision of the protective order) that cannot be resolved by the parties, will be resolved by the undersigned magistrate judge. Accordingly, the Court rejects Defendants' proposed addition to section 9(d).

**4.     Section 14.4: Export Control / Outside U.S.**

The parties agree that disclosure of protected material in this action shall be subject to all applicable laws and regulations relating to the export of technical data, and they have adopted a portion of the Model Order's text on this point. The parties disagree on two points: (1) whether the Producing Party should have responsibility for identifying which material contains technical data subject to export controls; and (2) whether an additional provision should be included specifying that no protected material may be removed from the United States or shared with foreign nationals. *Id.* at 1-2, 5.

As an initial matter, it is not clear to the Court that there is any genuine expectation that any party will need to remove or access another party's protected material outside the United States, or make it available to a foreign national, so the concerns about undue burden that both

4

sides raise may be misplaced. With respect to the first disputed issue, there is no reason to deviate from the Model Order's requirement that the Producing Party identify technical data subject to export controls. Defendants state that they do not identify export-controlled information at a document-specific level, so compliance with this provision would be unduly burdensome. But Defendants do not explain how the Receiving Party could be expected to make this assessment with any less burden. With respect to the second dispute, the Court agrees that Defendants have shown the "highly confidential" material should not be removed outside the United States or disclosed to foreign nationals, except for limited purposes (e.g. deposition outside the United States), but Defendants have not shown that this restriction should apply to *all* protected material.

Accordingly, the Court adopts, in part, Defendants' proposed addition to section 14.4 regarding territorial restrictions and restrictions on access for foreign nationals to the extent these restrictions apply to "highly confidential" material, but not "confidential" material. The Court rejects Defendants' proposed deletion of the requirement that the Producing Party identify export-controlled materials.

### 5.   Dispute Resolution Procedures

Disputes regarding compliance with or implementation of a protective order are subject to the undersigned magistrate judge's expedited discovery dispute resolution procedures. *See* Judge DeMarchi's Standing Order for Civil Cases, section 4 at p. 2.[3] The parties' protective order should reflect these procedures. *See id.* ("For an example of the Court's typical revisions to the text of the model protective order for standard litigation, please see Case No. 5:22-cv-02882, Dkt. No. 24 (secs. 6.3 and 12.3)").

\*\*\*

The parties shall file a proposed protective order that complies with this order by **April 8, 2025**.

//

//

---

[3] https://cand.uscourts.gov/wp-content/uploads/judges/demarchi-vkd/Standing-Order-for-Civil-Cases-April-2024.pdf.

5

**IT IS SO ORDERED.**

Dated: March 28, 2025

Virginia K. DeMarchi
United States Magistrate Judge